# CHARLESTON.

ATKINSON *et al. v.* BECKETT *et al.*

Submitted January 30, 1892.—Decided April 9, 1892.

1. INJUNCTION—IMPLICATION—DISMISSION.

The proposition is generally true that an injunction once granted and perfected brings about a condition or *status* of persons and things that can only be set at large by a dismissal of the bill, or by formal order of dissolution.

2. INJUNCTION—IMPLICATION—DEED OF TRUST.

Yet an injunction may be dissolved by necessary implication, as, for example, where the enforcement of a deed of trust is restrained, and the collection of the debt secured enjoined, by the court below, and the appellate court, reversing on that point, decrees the debt secured to be valid and subsisting, and remands the cause with directions to collect under the deed of trust, and apply proceeds in a given order.

3. CIRCUIT COURT—INJUNCTION—IMPLICATION—SUPREME COURT OF APPEALS.

The Circuit Court can not review or make any alteration in the provisions or requirements of a decree of the appellate court certified back for further proceedings in order to a final decree but such further proceedings may be matter of decision for the first time in the lower court and of review in this Court.

*T. E. Davis* and *C. S. Stewart* for appellants cited 3 W.

Va. 285 ; 8 W. Va. 474 ; 16 W. Va. 245 ; 23 W. Va. 617 ; 9
Am. Dec. 385 ; 11 W. Va. 122 ; 10 Leigh 93 ; 2 W. Va. 25 ;
3 W. Va. 423 ; Id. 438 ; 16 Barb. 325 ; 2 Leigh 145 ; 1 H. &
M. 1 ; 34 Cal. 270 ; 14 W. Va. 264.

*W. N. Miller* for appellee cited 33 W. Va. 152 ; 20 W.
Va. 223 ; 24 W. Va. 551 ; 25 W. Va. 692 ; 33 W. Va. 543 ;
13 W. Va. 231 ; 26 W. Va. 583 ; Code, c. 125, s. 136 ; 18 W.
Va. 529 ; 30 W. Va. 666.

HOLT, JUDGE :

This case is a sequel of *Atkinson* v. *Beckett*, 34 W. Va. 584
(12 S. E. Rep. 717) ; and a brief reference to that case is
necessary to a proper understanding of the points involved
in this appeal.

In May, 1883, plaintiffs Atkinson & Piersol brought their
suit as judgment-creditors of the defendant William Beck-
ett to set aside as fraudulent a conveyance from defendant
William Beckett to his son William B. Beckett of the
"Daniel Haymond" farm of two hundred and twenty six
acres in Ritchie county. The relief prayed for was granted,
and the deed was set aside. But the land was also incum-
bered by what is called the "Tavenner" deed of trust, which
grew out of what is called the "Veach" deed of trust.

On the 6th November, 1882, by deed of trust of that date,
one W. L. Jackson made to George S. Veach, trustee, an
assignment of a stock of goods and other property for the
benefit of his creditors. Among these creditors and in the
third class were Daniel Gould and others, indorsers for
Jackson on various negotiable notes some payable and, I
infer, discounted at the Parkersburg National Bank, and
others at First National Bank of Parkersburg.

The trustee, Veach, in pursuance of the deed of trust, on
the 16th November, 1882, sold to defendant William Beck-
ett a portion of these goods, amounting in price to five
thousand five hundred and forty nine dollars and twenty
eight cents, the exact amount of the debts secured, and
Beckett gave to Veach, trustee, eight negotiable notes of
that date, payable at the First National Bank of Parkers-
burg—two for four hundred and fifty dollars each with in-

terest from date, each payable sixty days after date, and six others, each for seven hundred and seventy four dollars and eighty eight cents, with interest from date, and payable in four, six, nine, twelve, fifteen and eighteen months after date.    By deed of same date, William Beckett conveyed the Daniel Haymond tract of land to L. N. Tavenner in trust to secure to Veach, trustee in the Jackson deed of trust, the payment of these Veach notes and their renewals.    Some time after Beckett turned over to Veach two thousand two hundred dollars worth of these goods, and Veach sold them to D. S. Miller, and Miller became liable in Beckett's place for that amount of the original purchase-money, and soon after Beckett sold back and transferred to Veach a stock of goods largely made up of the "Jackson" goods, and Veach agreed to release Beckett from the payment of the Veach notes, executed by Beckett to him as trustee for the Jackson trust-deed goods.

Some of the trust-creditors of Jackson agreed to this last sale to Veach and Miller, but others did not, namely, Daniel Gould, Josiah Gould, O. S. Jones, S. L. Gould, William Kraft, Thomas Murphy and Warren Bowen, the third class creditors of Jackson by separate indorsements of his paper, who were to be saved harmless, as provided in the Jackson deed of trust.    These parties, Daniel Gould and the others, came in by petition, producing and filing as lifted by them these notes, which they had indorsed for Jackson, and alleging that, though they had assented to the sale made by Veach, trustee, of the Jackson goods to William Beckett, they had not agreed to the sale by Beckett back to Veach in discharge of the Beckett notes secured by his deed of trust to Tavenner; that they were wholly ignorant of it.

By order of June 27, 1883, the cause was referred to Commissioner Dawson, to ascertain and report various facts.    On 22d June, 1883, Tavenner, as trustee, advertised that he would sell, under the deed of trust to him, the Daniel Haymond land of Beckett on 10th November, 1883. But on the 3d July, 1883, William Beckett presented his bill of injunction to prevent and restrain the trustee, Tavenner, from selling, alleging that the Veach notes had been paid; and the court on that day entered an order restraining the

defendants Veach, Gardnay, Golbert, and Murphy and the First National Bank from negotiating the eight negotiable Veach notes. On 6th June, 1885, Commissioner Dawson completed and returned his report.

Among other things he reported the notes secured by trust-deed from Beckett to Tavenner as paid off; that the notes should be canceled, and the trust deed released as being no longer a lien on the Daniel Haymond tract of land. Daniel Gould and others excepted.

On 6th July, 1887, the cause came on for final hearing on, *inter alia,* Commissioner Dawson's report and Gould's exceptions; and the court confirmed the report, and thereby ordered the Tavenner deed of trust to be cancelled and annulled, and Tavenner, the trustee, Veach, the beneficiary in that deed of trust, and the assignee in the Jackson deed of trust, and the First National Bank of Parkersburg, were restrained and inhibited from selling the land and from collecting the notes secured by the Tavenner deed of trust; and the court further held that Daniel Gould and his co-petitioners had given Veach, trustee, full power to act; that William Beckett had paid and satisfied to him the Tavenner trust-notes; and that Beckett was not compelled to see that the money, *etc.,* paid by him to Veach, trustee, should be applied according to the deed of trust—and thus denied Daniel Gould *et al.* the relief sought.

From this decree, Daniel Gould, *et al.* obtained an appeal to this Court 22d January, 1889, in which this Court held that as a general rule a trustee's authority over the trust-property is defined and limited by the instrument creating the trust, and he should be guided strictly by its provisions, and reversed the decree appealed from, so far as it relieved and discharged the "Daniel Haymond" farm of two hundred and twenty six acres from the deed of trust to L. N. Tavenner of November 16, 1882; and in all other respects it affirmed the decree complained of, and remanded the cause, with directions to carry the decree into execution as thus modified.

The cause was remanded, and on the 17th February, 1891 came on to be finally heard on the mandate of this Court and other papers; and the Circuit Court of Ritchie county

decreed Daniel Gould and others their respective claims, directed the land in the Tavenner deed of trust to be sold, unless the Veach notes were paid before a given day, and appointed commissioners for the purpose, having ascertained and marshalled the various liens against the land according to their respective priorities.

From this decree of 17th February, 1891, this appeal has been taken by William Beckett, and eleven assignments of error are made, which can be most conveniently treated under two heads:

First error : The court erred in proceeding to enter the decree complained of before the injunction against enforcing the Tavenner deed of trust or collecting the notes from Beckett to Veach, trustee, thereby secured had been dissolved.

The proposition is generally true that an injunction granted and perfected creates a condition or *status* of affairs which can only be set at large or broken up by a dismissal of the bill or by decree of dissolution, and that the reversal of a final decree does not reverse previous interlocutory decrees merely by implication, unless such implication be necessary. But in this case the life of the injunction was taken away by a distinct and explicit repudiation of the sole equity that gave it vitality and perpetuated it, and this necessary foundation removed by the express mandate of the court, the injunction in the decree being reversed, and in this particular alone reversed, dissolved into nothingness as effectually as if the court had said, in so many words, "Let it be dissolved." The decree directed the payment of the money secured by the deed of trust, which had been enjoined, to be paid by Beckett, a party to the suit, and practically worked a dissolution without a formal order. *Crooks Ex'r* v. *Turpin*, 10 B. Mon. 243.

Second error assigned: The court erred in decreeing Daniel Gould the sum of two hundred and fifty nine dollars and forty nine cents, because there is no proof that the note set up is the note mentioned in the Jackson deed of trust.

Daniel Gould and others filed their petition in the cause, in which and with which they file these notes as exhibits

with the allegation that they had been compelled, as Jackson's indorsers, to pay and lift them; and they pray relief on this new matter thus set up. The petition is sworn to and ordered to be taken also as their answer.

Their respective claims are not controverted by any one, only it was contended that the Veach notes had been paid, and the Tavenner deed of trust thus satisfied, and therefore they were no charge against the two hundred and twenty six acre tract of land, by reason of the fact that the fund out of which they were payable, which was a charge, had been paid, and the land released. These notes may have been renewals, and may not correspond exactly in amount with those mentioned in the deed of trust; but they have been treated as the same notes by the court below, and by this Court, and by all the parties so treated, as a result of the pleadings. It would be a novel proceeding to entertain a denial made on this second appeal for the first time by way of assignment of error; and the assignments of error No. 3, No. 4, No. 5, No. 6, No. 7, No. 8 are of the same kind, relating to other notes of the other petitioners.

No. 9. The court erred in not referring the cause to a commissioner to ascertain rental value before decreeing a sale.

To this assignment there are two answers: *First.* In selling under a deed of trust according to its terms as prescribed by the trust-debtor, lands are not rented; and of course there is no reason for ascertaining their rental value. *Second.* The court below, having ordered the deed of trust cancelled by its final decree of 6th July, 1887, which in other respects was left undisturbed by this Court, declares that the rents and profits of said real estate will not be sufficient to pay the judgment-liens within a period of five years.

No. 10. The court erred in not referring the cause to a commissioner to ascertain and report what sums of money arising from the funds paid by appellant William Beckett in discharge of the Tavenner deed of trust were paid by Veach, trustee, to the creditors of W. L. Jackson.

This had already been done, as the record shows, and no doubt would have been done again, if any one had brought

any fact to the attention of the court, tending to show that Veach, trustee, had paid anything on the claims of Daniel Gould and others. It is not proper to enter "fishing" orders of reference.

No. 11. The court erred in decreeing in favor of E. L. Mentzer and twelve other judgment-creditors named in the assignment, because said respective judgments were obtained subsequent to the deed made by William Beckett to W. B. Beckett, and are consequently no liens upon the two hundred and twenty six acres of real estate mentioned in the bill.

The court below, by its decree of 6th July, 1887, held this deed to have been made without consideration, and therefore voluntary and for the purpose of hindering, delaying and defrauding his creditors. In *Atkinson* v. *Beckett*, 34 W. Va. 584–586 (12 S. E. Rep. 717) this part of the decree is affirmed as expressly approved.

The doctrine involved is not simply, as to all the points raised, that of *res judicata,* but one or more of them rests outside *res judicata* proper upon the broader, underlying principle, that, right or wrong, there must be an end of litigation, as the dictate of a wise public policy embracing limitations, waiver, passing by without contradiction when it was the party's duty to speak or object, without being the point once before in issue, or a point which must have been decided in deciding that one. The point decided must arise from a given state of facts, put in issue by the pleadings, and which was decided expressly, or which must have been decided in some way as involved in the decision reached.

A *cestui que trust* who has not conspired with the trustee, nor consented to nor assisted in any way such trustee and the trust-debtor in a violation of his duty, resulting in a perversion and loss of the trust-fund, does not lose his right to look for payment to the trust-debtor's land, granted by the debtor as security, with direction given by him to the trustee as to the manner of its execution. Daniel Gould and others have pleaded and proved that they are such creditors. Therefore they have the right to have the Tavenner deed of trust enforced, so far as may be necessary to

pay their debts, or such parts thereof as remain unpaid. By 34 W. Va. 584 (12 S. E. Rep. 717) this is *res judicata*. The record shows these notes lifted, and in their hands wholly unpaid. *Prima facie*, they are, as indorsers of Jackson, entitled under the Veach deed of trust to be made whole by receiving that amount. Neither one of the two points here involved is or was *res judicata;* but they have both become so now, because there is nothing to put them in issue, nor a suggestion in any form to the court below that their respective amounts as appearing by the notes do not represent the true amount, or that any payment had been made on them by Veach to the trustee, so as to make it the duty of the court, in some way, to inquire into the amounts now really due.

Decree complained of affirmed.

AFFIRMED.